# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| FAITH SAKALA, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: PWG-16-790 |
| | * | |
| BERNADETTE TEMBO MILUNGA and KAINGU MILUNGA, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

In this case, Plaintiff Faith Sakala alleges that Defendants Bernadette Tembo Milunga and Kaingu Milunga ("the Milungas") brought her to the United States from her native Zambia as a domestic worker and compelled her to perform unpaid labor. Am Compl., ECF No. 10. The Milungas have filed an Answer in which they bring Counterclaims alleging that Sakala participated in a civil conspiracy to extort money from them (Count I); committed fraud by misrepresenting her desire to work for them and pursue studies in the United States (Count II); defamed and inflicted emotional distress upon them by telling others that she was mistreated and exploited (Counts III and IV); committed assault and battery by poisoning their food and physically abusing their children (Count V); and invaded their privacy by publishing pictures of their children on Facebook (Count VI). Answer & Defs.' Counterclaims 36–45, ECF No. 22. Pending before the Court is Sakala's Motion to Dismiss the Milungas' Counterclaims, Pl.'s Mot., ECF No. 49, along with which she has filed a supporting Memorandum, Pl.'s Mem., ECF No. 49-1. The Court forewarned the Milugas that failure to respond to Sakala's pending motion

could result in dismissal of their Counterclaims. ECF Nos. 54, 55. The Milungas filed a letter that attacks the merits of the Amended Complaint but have not responded to Sakala's arguments. Defs.' Ltr., ECF No. 53. Rather than dismiss the Counterclaims for failure to prosecute, however, I will do so because the Milungas have failed to state any claims for which relief can be granted.

## Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. With respect to claims that allege fraud, "a party must state with particularity the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b). Fraud allegations that meet these heightened pleading requirements "typically 'include the

time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" *Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC-11-3758, 2013 WL 247549, at *5 (D. Md. Jan. 22, 2013) (quoting *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F. Supp. 2d 298, 313–14 (D. Md. 2000)).

## Discussion

### Count I: Civil Conspiracy

A civil conspiracy requires evidence of: (1) an agreement; (2) an unlawful or tortious act in furtherance of the conspiracy or employment of tortious means to accomplish an otherwise lawful act; (3) actual legal damage to the plaintiff. *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 284 (Md. 2007).[1] The conduct that the Milungas allege to be the core of the conspiracy is the filing of this lawsuit. Defs.' Counterclaims ¶ 16. From this Sakala infers that the Milungas allege malicious use of process as the underlying tortious act. Pl.'s Mem. 6. But the claim fails even under this generous construction because a malicious-use-of-process tort requires proceedings to have terminated in the alleged victim's favor. *Siegman v. Equitable Tr. Co.*, 297 A.2d 758, 762 (Md. 1972). As Sakala's lawsuit remains pending, no such claim is cognizable. Accordingly, I will dismiss the Milungas' civil conspiracy counterclaim.

### Count II: Fraud and Misrepresentation

A fraud claim requires particularized allegations that:

(1) the defendant made a false representation to the plaintiff, (2) the falsity of the representation was either known to the defendant or the representation was made with reckless indifference to its truth, (3) the misrepresentation was made for the purpose of defrauding the plaintiff, (4) the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) the plaintiff suffered compensable injury as a result of the misrepresentation.

---

[1] Both Sakala and the Milungas reside in Maryland, Am. Compl. ¶¶ 4–5, and it appears that Sakala's allegedly tortious conduct occurred in Maryland. Accordingly, Maryland law applies to the Counterclaims.

3

*Exxon Mobil Corp. v. Albright*, 71 A.3d 30, 49 (Md. 2013); *see also* Fed. R. Civ. P. 9(b). The Milungas allege that Sakala "fraudulently represented that she wanted to come to the United States to work for" them. Defs.' Counterclaims ¶ 20. But it is uncontested that she *did* work for them. *E.g.*, *id.* ¶¶ 5 ("Sakala began to work for Counterclaimants on December 1, 2014 . . . ."), 11 ("[B]y February 2015, it was clear to Counterclaimants that they could no longer afford to employ Sakala."). The Milungas also allege that "Sakala falsely represented that she wanted to attend school/college while she was employed with them." *Id.* ¶ 21. Even if Sakala never had any intention of pursuing higher education in the United States, the Counterclaims present no plausible explanation of how the Milungas reasonably relied upon that information to their detriment. As the Milungas fail to allege any causal connection between a false statement and any reasonable reliance or injury they suffered, their fraud counterclaim fails.

<u>Counts III & IV: Defamation and Intentional Infliction of Emotional Distress</u>

The Milungas allege that, during her employment, Sakala falsely told a person she met on trip to IKEA and Bernadette Tembo Milunga's work associates at the World Bank that she was "mistreated, abused, overworked and unpaid (had received no wages) by the Counterclaimants" and published similar falsehoods by filing a complaint with the World Bank after her employment concluded. *Id.* ¶¶ 27–38. The Milungas allege that this conduct amounts to both defamation and intentional infliction of emotional distress. *See id.* ¶¶ 26–35.

"Under Maryland law, to present a prima facie case for defamation, a plaintiff must ordinarily establish that the defendant made a defamatory statement to a third person; that the statement was false; that the defendant was legally at fault in making the statement; and that the plaintiff thereby suffered harm." *Gohari v. Darvish*, 767 A.2d 321, 327 (Md. 2001). "[I]n all defamation actions, 'truth is no longer an affirmative defense to be established by the defendant,

4

but instead the burden of proving falsity rests upon the plaintiff." *Telnikoff v. Matusevitch*, 702 A.2d 230, 246 (Md. 1997) (quoting *Jacron Sales Co. v. Sindorf*, 350 A.2d 688, 698 (Md. 1976)). Maryland's statute of limitations for defamation claims is one year. Md. Code Ann., Cts. & Jud. Proc. § 5-105. Sakala's interaction with the individual at IKEA allegedly occurred in August 2015. *Id* ¶ 15. And although it is unclear when Sakala's alleged communications with World Bank officials occurred, the Milungas state that they took place prior to her September 2015 termination. *Id.* ¶ 27; Answer 24. As the Milungas did not bring their Counterclaims until December 2016, the defamation claims arising out of Sakala's communications during her employment tenure are time-barred. As for the statements contained in Sakala's complaint to the World Bank, the Milungas admit that they continued to employ Sakala between March and September 2015 without paying her. Defs.' Counterclaims ¶ 12. By their account, they did so with Sakala's permission because she preferred to work without pay rather than be sent back to Zambia. *Id.* ¶ 13. Whatever the precise contours of the Parties' agreement, it is uncontested that Sakala was not paid during at least part of her tenure, so the Milungas cannot pursue a defamation counterclaim based on Sakala's statement that she was unpaid. As to her statements that she was "mistreated, abused, and overworked," *id.* ¶ 28, these are not matters of fact, but of opinion, which is not the province of defamation law. *CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 293 (4th Cir. 2008) ("The First Amendment . . . 'provides protection for statements that cannot reasonably [be] interpreted as stating actual facts about an individual.' " (internal quotation marks omitted) (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990))). Accordingly, I will dismiss all of the Milungas' defamation counterclaims.

The same conduct underlies the Milungas' intentional-inflict-of-emotional-distress claim.

> "In Maryland, the tort of intentional infliction of emotional distress is 'rarely viable, and is to be used sparingly and only for opprobrious behavior that includes

5

truly outrageous conduct.' " *Bestkoff v. Bank of America, N.A.*, No. CCB–12–1998, 2012 WL 4960099, at *5 (D.Md. Oct. 15, 2012) (citing *Snyder v. Phelps*, 580 F.3d 206, 231 (4th Cir.2009) (Shedd, J., concurring) (citation omitted)). To plead this cause of action, a plaintiff must show that (1) the defendants' conduct was " 'intentional or reckless,' " as well as " 'extreme and outrageous' "; (2) there was " 'a causal connection between the wrongful conduct and the emotional distress' "; and (3) the emotional distress was " 'severe.' " *Lasater v. Guttmann*, 5 A.3d 79, 89 (Md. Ct. Spec. App. 2010) (quoting *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977)). " 'Extreme and outrageous' "conduct is such that is " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Id.* (quoting Harris, 380 A.2d at 614 (internal citation omitted)).

*Mangani-Kashkett v. Bouqet*, No. PWG-13-1215, 2013 WL 3146939, at *2 (D. Md. June 18, 2013). Allegedly false accusations of labor abuses do not rise to the high standard of outrageous conduct articulated by Maryland courts. Thus, the Milungas' intentional-infliction-of-emotional-distress counterclaim cannot proceed.

## Count V: Assault and Battery

The Milungas assert that Sakala committed assault and battery by poisoning them and physically abusing their children during her tenure. Defs.' Counterclaims ¶¶ 37–40. A one-year statute of limitations applies to assault claims in Maryland. Md. Code Ann., Cts. & Jud. Proc. § 5-105. As the conduct that forms the basis of the Milungas' assault claim, which they filed in December 2016, occurred prior to Sakala's September 2015 termination, it is time-barred and cannot proceed. As for the battery claims, the Milungas believe that Sakala poisoned them because they got sick after eating food that she cooked. Defs.' Counterclaims 30. After a doctor diagnosed Ms. Milunga with ulcers, the couple stopped eating food prepared by Sakala and suffered no similar symptoms. *Id.* The Milungas' wild speculation of poisoning fails to assert a plausible battery claim, especially since the far more plausible and non-tortious explanation (i.e., ulcers) was actually pleaded by them. The Milungas also claim that their six-year-old son told

them that Sakala hit him. *Id.* at 32. At first they did not believe the accusation, but, for undisclosed reasons, now do. *Id.* A parent can bring a claim for tortious injury to a minor on the injured child's behalf or to recover medical expenses incurred to treat the child. *Piselli v. 75th Street Med.*, 808 A.2d 508, 520 (Md. 2002). The Milungas have not alleged that they incurred any expenses obtaining medical treatment for their children, who are not parties to the case. Thus, they have not alleged a viable claim based on the alleged battering of their children. Accordingly, I will deny the Milungas' assault and battery counterclaims.

Count VI: Invasion of Privacy

The Milungas allege that Sakala invaded their privacy by publishing images of their children on Facebook. Defs.' Counterclaims ¶¶ 43–48. Defs.' Counterclaims Ex. C., ECF No. 22-3. Maryland recognizes four types of invasion-of-privacy claims: (1) unreasonable intrusion upon seclusion; (2) appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) false light. *Lawrence v. A. S. Abell Co.*, 475 A.2d 448, 451 (Md. 1984). The Milungas do not specify what type of invasion of privacy Sakala allegedly committed. Regardless, the Maryland Court of Special Appeals has held that invasion-of-privacy claims must contain "overtones of mental distress as in defamation" and "affect[] reputation" in a manner that "would be offensive and objectionable to a reasonable person of ordinary sensibilities." *Taylor v. NationsBank N.A.*, 738 A.2d 893, 897 (Md. Ct. Spec. App. 1999), *rev'd on other grounds*, 776 A.2d 645 (Md. 2001). The pictures of the Milungas' children that Sakala allegedly posted on Facebook are utterly prosaic. They capture a visit to the White House, a ride on a subway, a trip to the beach, and nondescript candid shots in a home. Defs.' Counterclaims Ex. C. The images disclose nothing about the Milungas' children that is

not readily observable by the public whenever the children go out into the world with their parents. The pictures cannot support an invasion-of-privacy counterclaim.

## **Conclusion**

Each of the Milungas' Counterclaims fail to allege essential elements, are stated in conclusory fashion, and rely on rampant speculation. In a word, they are individually and collectively implausible, as well as legally deficient. Some are time-barred as well. I will therefore grant Sakala's Motion to Dismiss.

## **ORDER**

Accordingly, for the reasons stated, it is this 12th day of July, 2017, hereby ORDERED that Plaintiff's Motion to Dismiss, ECF No. 49, IS GRANTED.

/S/
Paul W. Grimm
United States District Judge

jlb