CHAMBERS OF
CHARLES B. DAY
UNITED STATES MAGISTRATE JUDGE

U.S. COURTHOUSE
6500 CHERRYWOOD LANE
GREENBELT, MD 20770
(301) 344-0393
FAX (301) 344-0394

October 31, 2018

**VIA ELECTRONIC FILING AND MAIL**

To: Counsel of Record and *Pro Se* Parties

Re:  *Faith Sakala v. Bernadette Tembo Milunga,* et al.
Civil Action No.: PWG-16-0790

Dear Counsel of Record and Defendants:

_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

OCT 3 1 2018

AT  GENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

A copy of the Report and Recommendation rendered in the above-captioned case is enclosed.  Any objections you wish to make thereto must be made **in writing and within 14 days** pursuant to Federal Rule of Civil Procedure 72(b)(2), a copy of which is enclosed.

After the time for filing written objections has expired, Judge Paul W. Grimm will review the Report and Recommendation regardless of whether you have filed written objections to it.  If you fail to file written objections within the time set forth above (or within the time of any extension specifically granted by the Court) and Judge Grimm subsequently adopts the Report and Recommendation, you will have lost your right to appeal the finding of the Report and Recommendation to the United States Court of Appeals for the Fourth Circuit.

Very truly yours,

/s/

Charles B. Day
United States Magistrate Judge

CBD/clc

C/m pro se parties
BB
10/31/18

# Rule 72. Magistrate Judges: Pretrial Order

**(a) Nondispositive Matters.** When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

**(b) Dispositive Motions and Prisoner Petitions.**

    **(1) Findings and Recommendations.** A magistrate judge must promptly conduct the required proceedings when assigned, without the parties' consent, to hear a pretrial matter dispositive of a claim or defense or a prisoner petition challenging the conditions of confinement. A record must be made of all evidentiary proceedings and may, at the magistrate judge's discretion, be made of any other proceedings. The magistrate judge must enter a recommended disposition, including, if appropriate, proposed findings of fact. The clerk must promptly mail a copy to each party.

    *(2) Objections. Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy. Unless the district judge orders otherwise, the objecting party must promptly arrange for transcribing the record, or whatever portions of it the parties agree to or the magistrate judge considers sufficient.*

    **(3) Resolving Objections.** The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

FAITH SAKALA,       *

                      *

        **Plaintiff**       *

                      *

     **v.**              *       **Civil Action No. PWG-16-0790**

                      *

**BERNADETTE TEMBO MILUNGA,** *et al.***,** *

                      *

        **Defendants.**      *

******

### REPORT AND RECOMMENDATION

Pending before the Court is the Motion of Plaintiff Faith Sakala Requesting Attorneys'
Fees and Expenses (ECF No. 106) ("Plaintiff's Motion") and the accompanying memorandum in
support thereof ("Plaintiff's Memorandum") (ECF No. 110). Pursuant to 28 U.S.C. § 636, and
Local Rule 301, the Honorable Paul W. Grimm referred this matter to the undersigned for the
making of a Report and Recommendation concerning the award of attorneys' fees and costs.
The Court has reviewed Plaintiff's Motion, as well as Defendants' opposition thereto. No
hearing is deemed necessary. Local Rule 105.6 (D. Md.). For the reasons stated herein, I
recommend an award of attorneys' fees to Plaintiff in the amount of $73,443.34 and costs in the
amount of $10,482.33.

### I.    Factual and Procedural Background

Plaintiff prevailed in a two-day bench trial. Prelim. Order of J., ECF No. 104. Plaintiff is
a Zambian national and was employed by Defendants to provide childcare services and other
domestic tasks at their home. Pl.'s 2nd Am. Compl. ¶¶ 5, 13, ECF No. 10. Defendants are a
married couple who were living in Maryland at the time of the events in question. *Id.* at ¶¶ 6-7.

Defendant Bernadette Tembo Milunga was an employee of the World Bank. *Id.* at ¶ 6. Plaintiff and Defendant Bernadette Tembo Milunga signed a contract detailing the terms of Plaintiff's employment, including the work schedule, the tasks expected to be performed, the rate of compensation, and the number of sick and vacation days to which Plaintiff was entitled. *Id.* at ¶¶ 19-20(i). After working for and residing with Defendants for approximately ten (10) months, Plaintiff left Defendants' employment and home. *Id.* at ¶¶ 21, 25. Plaintiff eventually filed a complaint with the World Bank alleging Defendants failed to pay her in violation of the World Bank's policies and the contract. *Id.* at ¶ 29. After an investigation, the World Bank ordered Defendant Bernadette Tembo Milunga pay Plaintiff $14,140.85 in owed wages. *Id.* at ¶¶ 30-33.

Plaintiff commenced this proceeding on March 17, 2016. Pl.'s Compl., ECF No. 1. Among the eight (8) claims she raised were involuntary servitude, slavery and trafficking under the Alien Tort Statute, violations of the Fair Labor Standards Act ("FLSA"), the Maryland Wage and Hour Law ("MWHL"), the Maryland Wage Payment and Collection Law ("MWPCL"), intentional infliction of emotional distress, fraud and unjust enrichment. Pl.'s Compl. ¶¶ 47-80.

Shortly after the complaint was filed, Plaintiff's attorney withdrew representation due to the fact the Court of Appeals of Maryland indefinitely suspended him from the practice of law. Pl.'s Mot. To Strike Appointment Of Counsel, ECF No. 4. Plaintiff asked the Court for *pro bono* counsel so she could continue her suit. Mot. To Strike Appearance of Counsel, ECF No. 4. At the Court's request, attorneys with the law firm Saul Ewing Arnstein & Lehr LLP ("the Saul Firm") agreed to provide legal services to Plaintiff *pro bono*. Order Appointing Counsel, ECF No. 7. Under their representation, Plaintiff filed a Second Amended Complaint that included ten (10) counts spanning from claims under the Trafficking Victims Protection Reauthorization Act ("TVPRA") to breach of contract, to wage and hour claims under federal and state laws. Pl.'s

2

2nd Am. Compl. ¶¶ 42-110. Just prior to trial, Plaintiff withdrew the TVPRA claims. Stip. of Dismissal of Counts I-V of Pl.'s 2nd Am. Compl., ECF No. 97.

At the beginning of the instant proceedings, Defendants were also represented by counsel. However, after filing their Answer to Plaintiff's Second Amended Complaint, Defendants' counsel withdrew representation. Order Granting Joint Mot. To Withdraw as Att'y, ECF No. 47. The Court appointed *pro bono* standby counsel for the limited purpose of explaining pre-trial requirements to Defendants and answering their questions during the trial. Order Appointing *Pro Bono* Counsel, ECF No. 80. Defendants conducted the remainder of the litigation *pro se*, which included discovery, a motion for summary judgment, and a two-day trial.

Ultimately, Plaintiff prevailed on claims raised under the FLSA, the MWHL, the MWPCL, and for breach of contract. Prelim. Order of J., ECF No. 104. The Court found in favor of Defendant Kaingu Milunga on the claim of unjust enrichment. *Id.* The Court awarded Plaintiff $29,970.03 under her MWPCL claim as duplicate damages could not be awarded under all four prevailing claims. *Id.* at 2. This amount accounted for the payment of $14,140.85 that Defendants already tendered in response to the findings of the World Bank investigation. Tr. 30:17-31:2, 40:4-6, ECF No. 105. The Court also affirmed that Plaintiff was entitled to seek attorneys' fees. Prelim. Order of J., ECF No. 104.

Plaintiff now seeks attorney's fees in the amount of $122,547.50 and costs in the amount of $17,306.00. Pl.'s Mem. 5. In their response to Plaintiff's Motion, Defendants focused on the elements of Plaintiff's underlying claims. Defs.' Resp., ECF No. 109. They also included a recitation of the Court's "Rules and Guidelines for Determining Attorneys' Fees in Certain Cases" and a survey of various decisions discussing American courts' historical averseness to shifting fees. Defs.' Resp. 2-22 (citing App. B, Local Rules [D. Md. 2016] [the "Guidelines"]).

3

Defendants also directed the Court's attention to the fact that Plaintiff's counsel "focused on the Human Trafficking claims" from the outset of this case. *Id.* at 1. Defendants noted that Plaintiff only withdrew these claims and focused on the wage and hour claims "after the pre-trial conference where [Judge Grimm] emphasized that both parties focus on the hours of work." *Id.* In support thereof, Defendants cited the quarterly statements Plaintiff submitted to Defendants in compliance with the Guidelines. Defendants provided neither a counter-offer for how much Plaintiff should receive in fees nor did they include copies of these quarterly statements with their response.

## II.    Legal Standard

Courts in the United States follow the "American Rule" when it comes to the award of attorney's fees. In essence, a prevailing party must pay its own attorney's fees unless there is a fee shifting statute or a contractual obligation. *See Myers v. Kayhoe*, 391 Md. 188 (2006). When a request for attorney's fees is based on a fee shifting statute, the Court will generally follow a "lodestar" approach: the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Grissom v. Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). In that regard, federal courts in the Fourth Circuit have followed the precedent from the Fifth Circuit set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The *Johnson* decision requires the Court to consider twelve factors in determining appropriate relief:

(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the

4

professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978) (superceded by statute with respect to the Truth In Lending Act). After calculating the lodestar amount, the Court must then subtract for labors spent on unsuccessful claims that are unrelated to the successful ones. *Randolph v. Powercomm Constr., Inc.*, 715 F. App'x 227, 230 (4th Cir. 2017). Finally, the Court is to take into account the degree of success obtained and award some percentage of the remaining amount based on that assessment. *Johnson v. City of Aiken*, 278 F.3d 333, 337 (4th Cir. 2002) (citing *Hensley v. Eckerhart*, 461 U.S. 424 [1983]).

In order to recover for attorney's fees, counsel must submit appropriate materials supporting his or her claim. This typically includes billing records and affidavits regarding the services provided. Since reasonableness is the touchstone for the award of fees, the party seeking the award of fees "must provide 'detailed records' that specify 'the services performed, by whom they were performed, the time expended thereon, and the hourly rate charged.'" *Bel Air Plaza Ltd. P'ship v. Ross Dress for Less, Inc.*, Civ. No. CCB-14-2533, 2016 WL 3440191, at *1 (D. Md. Jun. 23, 2016) (citing *Rauch v. McCall*, 134 Md. App. 624, 639 [2000][citation omitted]). When a claim for attorney's fees is filed in the federal court in Maryland, there is an extra layer of complexity arising from the Court's adoption of its Guidelines. The Guidelines address the format for filing the fee request, the recording of time and the submission of quarterly statements. They also provide direction regarding what is compensable and non-compensable time. For the convenience of counsel, these Guidelines list a presumptive range of reasonable hourly rates. *Gonzales v. Caron*, Civ. A. No. CBD-10-2188, 2001 WL 3886979, at *2 (D. Md. Sept. 2, 2011) ("[G]enerally this Court presumes that a rate is reasonable if it falls within these ranges.").

Once a fee request is submitted, it becomes the responsibility of the party challenging the request to articulate the areas where an award would be inappropriate. "[T]he Court will not review any challenged entry in the bill unless the challenging party has identified it specifically and given an adequate explanation for the basis of the challenge." *Thompson v. U.S. Dept. of Hous. and Urban Dev.*, No. Civ. A. MJG-95-309, 2002 WL 31777631, at *10 (D. Md. Nov. 21, 2002). However, in circumstances where there is a *pro se* defendant the Court may afford some leniency to their arguments challenging a motion for fees. *See, e.g.*, *Harrison-Belk v. Rockhaven Cmty. Care Home*, C/A No. 3:07-54-CMC, 2008 WL 2952442, at *2 (D.S.C. July 29, 2008), *as amended* (July 31, 2008), *aff'd sub nom. Harrison-Belk v. Barnes*, 319 F. App'x 277 (4th Cir. 2009) (reviewing an attorney's fees motion under the twelve-factor test even when a *pro se* defendant's opposition simply stated plaintiff failed to meet the requirements but "provide[d] no discussion or elaboration as to why he believe[d] this is so").

## III.  Analysis

Under the FLSA, a prevailing plaintiff is entitled to reasonable attorney's fees. 29 U.S.C. § 216(b). The MWHL and MWPCL also contain fee-shifting clauses. Md. Code Ann., Lab. & Empl. § 3-427(d)(1)(iii) ("If a court determines that an employee is entitled to recovery in an action under this section, the court shall award to the employee . . . reasonable counsel fees and other costs."); Md. Code Ann., Lab. & Empl. § 3-507(b)(1) ("[T]he court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs.").

The Fourth Circuit has identified a three step process for assessing fee shifting cases. First, the Court should identify the number of hours reasonably expended and multiply it by a reasonable hourly rate. "To ascertain what is reasonable in terms of hours expended and the rate

charged, the [C]ourt is bound to apply the factors set forth in *Johnson v. Georgia Highway Express Inc.*" *Randolph*, 715 F. App'x at 230. Next, fees or hours must be subtracted for labors spent on unsuccessful claims that are unrelated to the successful ones. *City of Aiken*, 278 F.3d at 337. Finally, the Court is to award some percentage of the remaining amount based on the degree of the success obtained. *Id.*

### A.      Lodestar Amount

#### i.      Reasonable Hourly Rate

The following section explicitly discusses two of the *Johnson* factors: factor 5 - "the customary fee for like work;" and, factor 9 - "the experience, reputation and ability of the attorney[s]." *Barber*, 577 F.2d at 226 n.28.

Plaintiff has complied with the Guidelines' requirements for formatting her motion for fees. In support of her motion, Plaintiff submitted a memorandum detailing her attorneys' efforts spent prosecuting this case. This included hourly breakdowns of activities for each area of litigation and a declaration by Harriet E. Cooperman, Esq., detailing some of the unique difficulties the attorneys faced while representing Plaintiff. Declaration of Harriet E. Cooperman ("Cooperman Declaration"), ECF No. 110-1. Plaintiff's counsel represents that the quarterly statements of Plaintiff's fees, time spent, and total value of time were provided to Defendants. Cooperman Decl. ¶ 42. Plaintiff now seeks compensation for attorney's fees according to the following rates and hours:

| Name | Rate | Hours | Fees |
|------|------|-------|------|
| Harriet Cooperman | $475.00 | 63.5 | $30,162.50 |
| Jordan Rosenfeld | $225.00 | 253.8 | $57,105.00 |
| Douglas Sampson | $150.00 | 170.7 | $25,605.00 |
| Morgan Perna | $150.00 | 61.4 | $9,210.00 |
| Kimberly Crampton | $150.00 | 3.1 | $465.00 |
| **Total** | | **552.5** | **$122,547.50** |

7

Ms. Cooperman's declaration sets forth the education, skill, experience and billing rates for the lawyers and paralegal who provided legal services to Plaintiff. Ms. Cooperman is a partner at the Saul Firm with approximately 39 years of experience. Cooperman Decl. ¶¶ 4, 7. She was responsible for the litigation strategy, supervised Plaintiff's litigation team, and attended the pretrial conference. Cooperman Decl. ¶ 14. In her declaration, Ms. Cooperman attests to her credentials as a labor and employment lawyer; these include serving as Chair for various firms' Labor and Employment Groups, serving as the Vice Chair of the Maryland State Higher Education Labor Relations Board, and her significant experience litigating before federal and state courts as well as administrative agencies. Cooperman Decl. ¶¶ 3-8. Ms. Cooperman states she normally charges $660 per hour, but Plaintiff requests an award at a rate of $475.00 per hour. Pl.'s Mem. 10.

In addition to Ms. Cooperman, the Saul Firm assigned three associates to Plaintiff's case who provided the bulk of the necessary legal services. Cooperman Decl. ¶ 15. The lead trial attorney, Jordan Rosenfeld, has practiced for six (6) years and previously conducted trials in Maryland state courts. Cooperman Decl. ¶ 10. While Mr. Rosenfeld normally bills at $315.00 per hour, Plaintiff seeks reimbursement at a rate of $225.00 per hour. Pl.'s Mem. 10. The two remaining associates, Douglas Sampson and Morgan Perna, each have approximately three (3) years of experience and normally bill at $295.00 and $275.00 per hour respectively. *Id.* Kimberly Crampton, a paralegal with over twenty years of experience, also assisted in Plaintiff's legal representation. *Id.* at 4. Ms. Crampton normally bills at $285.00 per hour. Cooperman Decl. ¶ 35. For Mr. Sampson, Ms. Perna and Ms. Crampton, Plaintiff seeks only to recover fees at a rate of $150.00 per hour. *Id.* at ¶ 33.

In her affidavit, Ms. Cooperman opines that the rates charged by her firm are "reasonable and comparable to the rates charged by Maryland attorneys and paralegals with similar skill, experience, and reputation for labor employment litigation matters." *Id.* at ¶ 36. Moreover, she states that the rates requested are "well below the comparable market rates" and that courts have approved rates to compensate attorneys and paralegals with similar skill, experience and reputation as the Saul Firm that are "no less than the rates requested in the instant Motion." *Id.* at ¶¶ 37-38. I note that Plaintiff's Motion is not supported by affidavits from attorneys outside of the Saul Firm or citations to other cases.[1] However, this deficiency is not fatal. The fee rates under which Plaintiff seeks to recover are all within the range of fees outlined in the Guidelines and are therefore deemed presumptively reasonable in the eyes of this Court. *See Gonzales,* Civ. No. CBD-10-2188, 2001 WL 3886979, at *2. The Court recognizes that Plaintiff's requested rates represent a significant reduction over her attorneys' typical rates. The Court is nonetheless of the view that the Guidelines are appropriate and more representative of a broader range of fees charged by practitioners appearing in the federal court in Maryland.

Accordingly, the recommended rates of compensation are: Ms. Cooperman's time at a rate of $475.00 per hour; Mr. Rosenfeld's time at a rate of $225.00 per hour; and, Mr. Sampson, Ms. Perna and Ms. Crampton at a rate of $150.00 per hour.

## ii. Reasonable Hours Expended

While the first of the *Johnson* factors focuses on "the time and labor expended" on a particular case, this factor cannot be consider in a vacuum as the particular circumstances of a case can change what a reasonable expenditure of hours might be. Accordingly, the Court will

---

[1] This additional component is commonly acknowledged as "satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which [a party] seeks an award." *Robinson v. Equifax Info. Servs., LLC,* 560 F.3d 235, 244 (4th Cir. 2009) (quoting *Plyler v. Evatt,* 902 F.2d 273, 277 (4th Cir. 1990)).

consider several of the *Johnson* factors together to provide some context for this case before assessing what would be a reasonable number of hours to expend.[2]

Cases with individual wage and hour claims are generally less desirable to attorneys as the potential recoverable amount is likely much smaller than a class action. *See Harrison-Belk v. Rockhaven Cmty. Care Home*, No. 3:07-54-CMC, 2008 WL 2952442, at *3. *Pro bono* cases are even less desirable as there is no guarantee of payment. While FLSA and other wage and hour cases have a fee-shifting clause in the statute, an attorney must still expend resources prior to payment. Further, while a typical wage and hour case is straightforward in regards to the elements of the claim and the facts necessary to prove them, this case was more complex. Specifically, this case included claims of involuntary servitude and human trafficking; such sensitive claims not only necessitated additional factual information, Plaintiff's attorneys had to utilize soft skills beyond what is typically required. Pl.'s Mem. 9. Additionally, there was little documentation available to corroborate facts in general. This meant the case rested on credibility and required the attorneys to spend significant time preparing witnesses to testify and to cross-examine opponent's witnesses.[3] Cooperman Decl. ¶ 29. As they knew the case was *pro bono* and likely had access to the Complaint, Plaintiff's counsel was aware or should have been aware of these risks when they undertook Plaintiff's representation. Pl.'s Mem. 10. However, Plaintiff's counsel could not have anticipated Defendants' decision to discharge their counsel

---

[2] These factors are:

> (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (6) the attorney's expectations at the outset of the litigation; . . . (10) the undesirability of the case within the legal community in which the suit arose . . . .

*Barber*, 577 F.2d at 226 n.28.

[3] Judge Grimm noted that credibility was a key factor for his decision in this case. Tr. 24:22–25:8, ECF No. 105.

10

mid-litigation and continue the matter *pro se*. This required Plaintiff's counsel to devote more time to the case than typical to sufficiently inform Defendants of their responsibilities throughout the proceedings. Pl.'s Mem. 8-9; Cooperman Decl. ¶¶ 22-25, 28. Various filings and orders issued throughout this case support this assertion. *See, e.g.*, Joint Mot. for Ext. of Time to Complete Disc., ECF No. 58; Corresp. Re: Resp. to Defs.' Letter Dated 10/19/17, ECF No. 71. Despite these additional challenges, Plaintiff's counsel provided quality representation. At the conclusion of the trial, Judge Grimm took time to thank both parties' counsel for taking the case *pro bono* and commented on the exemplary job they did throughout their representations. Tr. 6:15-23, ECF No. 105.

With this context in mind, the Court will turn to the first of the *Johnson* factors. While appreciative of counsels' undertaking, Plaintiff's fee request must still comply with the Guidelines and applicable case law. To begin with, there is a general prohibition in the Guidelines against "double billing" and in particular against double billing for certain tasks like depositions.[4] Plaintiff's counsel attests that they "made a concerted effort to delete any duplicative time." Pl.'s Mem. 7. This may be true, however, a review of the billable time submitted indicates a few areas where it is unclear whether tasks were double-billed, and certain items appear to have been double-billed without sufficient justification provided in support.

### 1. Hours Spent at Depositions

According to Plaintiff's breakdown, both Mr. Rosenfeld and Mr. Sampson attended the depositions of Defendants on August 22, 2017. Plaintiff now seeks an award of fees for the presence of both attorneys. Pl.'s Mem. Ex. 1 to Decl. 15, ECF No. 110-2. The Guidelines

---

[4] "Double billing" in the context of attorney's fees refers to situations where more than one attorney bills for services doing the same task on behalf of the same party. *See, e.g.*, App. B, Local Rules (2)(b) (stating "[o]nly one lawyer from each separately represented party shall be compensated for attending depositions" absent a valid reason for sending more than one).

disfavor the practice of compensating more than one attorney for attending a deposition. It states, "Only one lawyer for each separately represented party shall be compensated for attending depositions." Guidelines, App. B(2)(b). However, the explanatory footnote describes a scenario where a party may recover fees for the presence of two lawyers at a deposition. *Id.* Specifically, where it is shown that the presence of the less senior attorney is needed because of his involvement and superior knowledge of the organization of "numerous documents important to the deposition, but the deposition is of a critical witness whom the more senior attorney should properly depose" the Court may award fees for both attorneys. *Id.*

Here, Plaintiff failed to provide any additional explanation for why it was necessary that both attorneys were present at the depositions for both Defendants. It is the duty of the party seeking fees to provide the evidence necessary for the Court to evaluate the reasonableness of the fees. *See Atlantic Contracting and Material Co. v. Ulico Cas. Co.*, 380 Md. 285, 316 (2004). More importantly, Plaintiff attested that with the exception of trial, "where multiple attorneys attended conference calls, hearings, and depositions, the fee request includes the time of only one attorney." Pl.'s Mem. 7. From the time entries for dates immediately prior to the deposition it appears that Mr. Rosenfeld was responsible for deposing Defendant Bernadette Milunga and Mr. Sampson was responsible for deposing Defendant Kaingu Milunga. Pl.'s Mem. Ex. 1 to Decl. 15. Further, as Plaintiff states in her memorandum this case was very fact heavy, had little documentary evidence, and concerned events that spanned a period of nearly a year. In light of this, the Court recognizes that having more than one attorney at these depositions may have been necessary. However, due to Plaintiff's failure to provide additional reasoning, I recommend only awarding Plaintiff for half the time Mr. Sampson billed. The award for Mr. Sampson's time should therefore be reduced by 2.3 hours.

12

## *2. Hours Spent at Trial*

Mr. Rosenfeld and Mr. Sampson attended both days of trial on May 22 and May 23, 2018. Plaintiff now seeks an award of fees for the presence of both attorneys. While there is no rule in the Guidelines against compensating more than one attorney for attending a trial, under the explanatory footnote to Appendix B (2)(b) it states that compensation "must depend upon the complexity of the case and the role that each lawyer is playing." Guidelines, App. B(2)(b). The footnote goes on to give an example of where "a junior lawyer is present at trial primarily for the purpose of organizing documents but takes a minor witness for educational purposes" and states that the Court should considered billing the junior attorney at a paralegal's rate. *Id.*

Here, Plaintiff provided little explanation as to why both attorneys' presence at trial was necessary. While Plaintiff attests that Mr. Rosenfeld was the lead attorney for the trial, descriptions for each day are vague as to which attorney was responsible for which tasks. The transcript of the trial reveals that Mr. Rosenfeld was in fact the lead trial attorney. Mr. Sampson appears to have played a more limited role, the most significant of which was the cross-examination of Defendant Kaingu Milunga. As was the case with the depositions of Defendants, in the Court's view having more than one attorney at trial may have been necessary. As previously stated, this case was very fact-heavy and concerned events that spanned a period of nearly a year. Compounding the difficulties was the lack of documentary evidence available to refresh memories or otherwise guide testimony. However, as Plaintiff has not provided additional reasoning for the presence of two trial attorneys, I recommend reducing the amount awarded to Plaintiff. As Mr. Sampson's rate is already at the high end of the Guidelines' rate for paralegals, I recommend reducing his hours of compensation for the two dates of trial by one-

third each. Accordingly, I recommend Mr. Sampson's hours be reduced by 4.6 hours and 4.1 hours respectively.

### 3. Other Hours

#### a. Ms. Cooperman's Hours

Under Section III "Interrogatories, Document Production, and Other Discovery," on August 21, 2017, Ms. Cooperman billed 0.5 hours for time spent "Review[ing]/revis[ing] Response to RPD and Answers to Interrogatories." Pl.'s Mem. Ex. 1 to Decl. 12. However, on the same date under Section IV: "Depositions," Ms. Cooperman billed 0.5 hours for "Review[ing]/Revis[ing] Response to RDP and Answers to Interrogatories; reviw[ing]/analyz[ing] deposition outlines for Milungas depositions." *Id.* at 15. Since there is no indication that Ms. Cooperman's work concerning the "Response to RPD and Answers to Interrogatories" was not the same work billed twice under different sections (Interrogatories v. Depositions), I recommend reducing Ms. Cooperman's hours by 0.5 hours.

#### b. Mr. Rosenfeld's Hours

Under Section III "Interrogatories, Document Production, and Other Discovery," Mr. Rosenfeld billed 1.1 hours on August 22, 2017, for a "Call with Client, edit Answers to Interrogatories, edit Responses to Requests for Production of Documents." *Id.* at 13. However, on the same date under Section IV: "Depositions," Mr. Rosenfeld billed 7.0 hours for a "Call with client, edit Answers to Interrogatories, edit Responses to Requests for Production of Documents; attend and participate in Depositions of Defendants Bernadette and Kaingu Milunga." *Id.* at 15. Plaintiff provided no additional explanation as to how Mr. Rosenfeld's time billed under Section III was spent on a task different than what his time billed under Section IV was partially spent on. Accordingly, I recommend reducing Mr. Rosenfeld's hours by 1.1 hours.

14

### c. *Ms. Crampton's Hours for Paralegal Work*

Case law makes clear that "clerical work" should not be compensated as an award for attorney's fees. "Fees for work performed by paralegals are generally recoverable, but only 'to the extent they reflect tasks traditionally performed by an attorney and for which the attorney would customarily charge the client.'" *Kabore v. Anchor Staffing*, Civ. No. L-10-3204, 2012 WL 5077636, at *4 (D. Md. Oct. 17, 2012) (quoting *Hyatt v. Barnhart*, 315 F.3d 239 (4th Cir. 2002)).

Here, Plaintiff seeks to recover for Ms. Crampton's work, stating that she "scheduled depositions, obtained transcripts, obtained service, [ ] assisted with filings . . . and assisted in the maintenance and organization of case materials, among other support tasks." Cooperman Decl. at ¶ 15. While a paralegal is an invaluable asset to a litigation team, Plaintiff provides no argument that Ms. Crampton's services were "tasks traditionally performed by an attorney" or that they are not clerical or administrative in nature. *See, e.g.*, *In re Beenblossom*, No. BK10-40335-TJM, 2010 WL 2710417, at *4 (Bankr. D. Neb. July 7, 2010) (concluding that activities such as "[f]ile setup, scanning, setting up appointments" are clerical and, therefore, not billable). Therefore, I recommend providing no compensation for Ms. Crampton's time spent in this litigation. This would result in a reduction of her time in the fee petition by 3.1 hours.

### iii.   The Amount In Controversy and the Results Obtained

It is worth noting at this point that while the Fourth Circuit has deemed it mandatory to apply all the *Johnson,* factors at the first stage of this assessment,[5] this raises a concern that an award could be reduced twice for the same deficiency. Specifically, one of the *Johnson* factors

---

[5] *See Randolph v. Powercomm Constr.*, Inc., 715 F. App'x 227, 230 (4th Cir. 2017) (citing *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013) ("To ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply the factors set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).").

requires the Court consider, "the amount in controversy and the results obtained" when assessing the lodestar amount. *Id.* After determining the lodestar amount and subtracting fees for hours spent on unsuccessful claims, the Fourth Circuit then directs the Court to "award some percentage of the remaining amount, depending upon the degree of success enjoyed by the plaintiff." *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013). While the percentage awarded is not supposed to be simply proportional to the amount initially sought and the ultimate award, that difference is a "primary consideration" when ascertaining the degree of success. *Doe v. Chao*, 435 F.3d 492, 506 (4th Cir. 2006). With this concern in mind, I will follow the direction of the Fourth Circuit and apply all the *Johnson* factors when assessing the lodestar amount, however, the ultimate impact of the degree of success in this case will be considered in step three of the analysis.

At the outset of this litigation, Plaintiff sought $72,247.50 in unpaid wages and overtime and $1,064.00 in unused leave from her employment, coming to a base-level amount of $73,311.50. Pl.'s 2nd Am. Compl. ¶¶ 35-36, ECF No. 10. This amount did not take into account other expenses, or the fact Plaintiff also sought treble and punitive damages. *Id.* at ¶¶ 37-38. Additionally, Plaintiff brought claims under the TVPRA seeking an unspecified amount of damages, costs and fees. *Id.* at ¶¶ 42-74.

After nearly two years of litigation, the withdrawal of half her claims, and two days of trial, the Court awarded Plaintiff damages amounting to $29,970.03.[6] This amount is less than half of the base-level amount Plaintiff initially sought and less than a fifth of what she could have recovered under the MWPCL enhancements. While the outcome of a case depends on the particular facts, the outcome in this case is at least similar to other cases in this district. *See, e.g.,*

---

[6] This amount represented a trebling of the original damages awarded for unpaid wages and overtime ($14,703.63) less the amount already awarded by the World Bank ($14,140.85).

16

*Lipenga v. Kambalame*, 219 F. Supp. 3d 517, 525-26, 532 (D. Md. 2016) (awarding the plaintiff on default judgment $31,471.08 under the MWHL for a three-year period of employment where the plaintiff received some payment).

The twelfth of the *Johnson* factors requires the Court look at attorney's fees awarded in similar cases for reference. *Barber*, 577 F.2d at 226 n.28. Here, Plaintiff's award in damages represents approximately 25% of the amount Plaintiff is now seeking in attorneys' fees. This amount is proportionally similar to the attorneys' fees awarded in *Lipenga v. Kambalame* when comparing solely to the amount of damages awarded under the wage and hour claims. *See Lipenga v. Kambalame*, No. GJH-14-3980, 2017 WL 2493101, at *1 (D. Md. June 8, 2017) (awarding fees in the amount of $122,327.50, which is approximately four times as much as the amount awarded in damages). With the aforementioned reductions of hours and in consideration of the *Johnson* factors discussed, the reasonable lodestar rate comes to $119,947.50 with the following breakdown of compensation:

| Name | Rate | Hours | Fees |
|------|------|-------|------|
| Harriet Cooperman | $475.00 | 63.0 | $29,925.00 |
| Jordan Rosenfeld | $225.00 | 252.7 | $56,857.50 |
| Douglas Sampson | $150.00 | 159.7 | $23,955.00 |
| Morgan Perna | $150.00 | 61.4 | $9,210.00 |
| Kimberly Crampton | $150.00 | 0 | $0 |
| **Total** | | **534.4** | **$119,947.50** |

#### iv. Non-relevant Factors in Determining a Reasonable Fee

In considering the other factors laid out in the *Johnson* case, there are a couple that are not significant here. These include: factor 7 - "the time limitations imposed by the client or circumstances;" and factor 11 - "the nature and length of the professional relationship between attorney and client."

## B.  Reducing the Hours and Fees Spent on Unsuccessful, Unrelated Claims

After determining the lodestar amount, the Court must subtract any fees expended upon unrelated claims that were ultimately unsuccessful. "When all claims involve a common core of facts much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Randolph v. Powercomm Constr., Inc.*, 715 F. App'x 227, 230 (citing *Brodziak v. Runyon*, 145 F.3d 194, 197 [4th Cir. 1998] [alterations, ellipsis, and internal quotation marks omitted]). Therefore, where hours spent on unsuccessful claims can be "identified and separated, the court will subtract them." *Andrade v. Aerotek, Inc.*, 852 F. Supp. 2d 637, 642 (D. Md. 2012). Where hours benefited both successful and unsuccessful claims, "the court will grant those hours 'reasonably expended' on the [successful] claim and exclude those that exceed a 'reasonable expend[iture]' on the prevailing claims." *Id.*

In *Jackson v. Estelle's Place, LLC*, 391 F. App'x 239 (4th Cir. 2010), the plaintiffs originally brought 13 claims and sought class status but ended up settling as individual plaintiffs and on only four (4) claims, leaving nine (9) claims "abandoned." 391 F. App'x at 241. The Fourth Circuit affirmed the district court's decision to reduce the lodestar amount by 25% due to the number of claims the plaintiffs did not prevail on and the low amount recovered compared to what plaintiffs originally sought. *Id.*

In Plaintiff's memorandum for the instant motion, it states that Plaintiff "prevailed on all claims, and obtained a favorable damages award, including treble damages under the MWPCL." Pl.'s Mem. 4. While it is true Plaintiff prevailed on four of the five remaining causes of action, Defendant Kaingu Milunga prevailed against Plaintiff's claim of unjust enrichment against him. [7]

---

[7] Judge Grimm found for Defendants on Plaintiff's unjust enrichment claim solely on the premises that he found Defendant Kaingu Milunga was Plaintiff's employer for purposes of the

Further, for the majority of the pendency of this matter Plaintiff sought relief on five (5) claims brought under the TVPRA, withdrawing those claims just prior to the commencement of trial. *Id.* Plaintiff admits she did this partially in response to Defendants' motion to dismiss. *Id.* Whether Plaintiff withdrew these claims after making an independent assessment of new case law in the Fourth Circuit or in response to Judge Grimm's comments during a pretrial conference as alleged by Defendants is immaterial. The significance of the withdrawal of these claims is that they represent half of the case Plaintiff pursued for nearly the entirety of this matter.

Turning first to the wage and hour claims Plaintiff prevailed upon, these claims focused on the nature of Plaintiff's employment, the duration of her employment, the number of hours spent working and the amount of compensation Plaintiff received.[8] Plaintiff also prevailed on her breach of contract claim, which required she prove that there was a contract and that a party to that contract materially breached its terms resulting in damages.

Turning next to the claims Plaintiff did not prevail upon, for an unjust enrichment claim Plaintiff had to show that she conferred a benefit upon Defendant Kaingu Milunga, that Defendant Kaingu Milunga appreciated or had knowledge of that benefit, and that he accepted or retained the benefit under such circumstances as would make it inequitable for him to do so without payment. *Diane Sales, Inc. v. Am. Express Centurion Bank*, Civ. A. No. GLR-14-1063,

wage and hour claims and therefore could not be liable under unjust enrichment. Tr. 40:12-23, ECF No. 105. However, should the determination of Defendant Kaingu Milunga's status as an employer be overturned on appeal, Plaintiff would prevail on the unjust enrichment claim against him. *Id.* at 41:19-23.

[8] To prevail on her FLSA and MWHL claims, Plaintiff had to prove the following: "(1) plaintiff was employed by the defendant; (2) plaintiff was engaged in commerce or in the production of goods for commerce; (3) plaintiff was not compensated for all hours worked during each work week at a rate equal to or greater than the applicable minimum wage; and (4) none of the exemptions in 29 U.S.C. § 213 apply to plaintiff's position." *Lipenga*, 219 F. Supp. 3d at 526 (quotations omitted). For her MWPCL claim, Plaintiff had to prove that she was entitled to wages and that they were not paid in full. Md. Code Ann., Lab. & Empl. §§ 3-505, 3-507.2(a).

2014 WL 11429026, at *3 (D. Md. July 14, 2014). Considering the nature of the claims at issue, the Court is left with the conviction that the evidence and labors required to establish any of Plaintiff's successful claims were substantially the same evidence and labor required to prove the unjust enrichment claim. Given that Defendant Kaingu Milunga was alleged to be either an employer under the FLSA or to have been unjustly enriched by Plaintiff's uncompensated work, there is a core of relevant facts that were identical across the board. So it was not as if Plaintiff's efforts would have been any different had Plaintiff not filed the unjust enrichment claim. The same cannot be said for the claims raised under the TVPRA that Plaintiff withdrew just before trial.

As already noted, the TVPRA claims are more complex than a classic wage and hour claim. They likely involved significant effort on the attorneys' part to uncover the intent of the parties, events that led to the alleged trafficking or involuntary servitude, and evidence of any abuse or neglect Plaintiff endured. The length of time Plaintiff worked each day would certainly support for this kind of claim, however, it is not sufficient evidence to prove them. *See, e.g., Lipenga*, 219 F. Supp. 3d at 525-6 (discussing facts deemed sufficient to show violations of TVPRA, including evidence of abuse, threats, false promises, and details of how plaintiff came to the United States from Malawi). While the claims Plaintiff raised under the TVPRA arose out of this common core of facts, they ultimately needed more details as to interactions between parties and their intent than the wage and hour claims.[9] *See generally id.* (discussing facts deemed sufficient to show violations of TVPRA and FLSA claims).

---

[9] Specifically, Plaintiff had to prove that Defendants "entice[d], persuade[d], or induce[d Plaintiff] to go on board any vessel or to any other place with the intent that [Plaintiff] may be made or held as a slave, or sent out of the country to be so made or held." 18 U.S.C. § 1583(a)(2). Another claim required Plaintiff to show Defendants conspired to do the aforementioned act in violation of the TVPRA. 18 U.S.C. § 1594(b). A third claim Plaintiff

For all of the aforementioned reasons, I recommend reducing the fees awarded by one-third for the period spanning from the commencement of the Saul Firm's representation through the withdrawal of counts I through V. This comes to a fee amount of $56,286.67 for August 29, 2016 to May 10, 2018, and $35,517.50 for the remaining portion of the litigation, totaling in a $91,804.17 lodestar amount.

## C. Awarding a Percentage Based on the Degree of Success

The final step in this process is determining what percentage of the remaining amount should be awarded based on the degree of the success obtained. *Johnson v. City of Aiken*, 278 F.3d 333, 337 (4th Cir. 2002). The degree of success is measured by two reference points, namely the amount sought and the damages and relief awarded. The Supreme Court has "reject[ed] the proposition that fee awards . . . should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers." *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986); *see also Nigh v. Koons Buick Pontiac GMC, Inc.*, 478 F.3d 183, 190 (4th Cir. 2007) (holding that courts may not "reflexively reduce fee awards whenever damages fail to meet a plaintiff's expectations in proportion to the damages' shortfall"). Rather, that is just one of many factors to consider. *City of Riverside*, 477 U.S. at 574. Nonetheless, the Fourth Circuit has stated that the Court must give "primary consideration to the amount of damages awarded as compared to the amount sought" in order to "constrain a court's discretion in setting an award." *Doe*, 435 F.3d at 506 (internal quotations and citations omitted). "Indeed, the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Id.*

---

raised required proof that Defendants "knowingly recruit[ed], harbor[ed], transport[ed], provid[ed], or obtain[ed] by any means [Plaintiff] for labor or services" in violation of the TVPRA. 18 U.S.C. § 1590(a). The remaining claims required evidence that Defendants knowing held Plaintiff in involuntary servitude by any combination of inducements, including force, threats of force, serious harm or threats of harm. 18 U.S.C. § 1590, 1594, 1595.

Furthermore, "[t]he comparison should be with the relief sought, not the relief most important to the plaintiff. The court must therefore view the entirety of the suit objectively." *Western Insulation, LP v. Moore*, 362 Fed. App'x 375, 381 (4th Cir. 2010) (citations, internal quotations, and emphasis omitted).

In trying to measure the degree of Plaintiff's success, the Court therefore returns to the original sums demanded in the Amended Complaint and the actual monetary award provided. Again, Plaintiff originally sought a base-level amount of $73,311.50 in unpaid wages, overtime and unused leave. Pl.'s 2nd Am. Compl. ¶¶ 35-36, ECF No. 10. This amount does not include any claim for treble damages or damages under the TVPRA, which could have easily totaled into the low- to mid-six figures if successful.[10] After nearly two years of litigation and two days of trial, the Court awarded Plaintiff damages of $29,970.03. Prelim. Order of J., ECF No. 104. This represents the amount of unpaid wages less the amount Plaintiff already recovered through the World Bank proceeding. Tr. 30:17-31:2, 40:4-6, ECF No. 105. It is also less than half of the base-level amount of wages and overtime Plaintiff initially sought and less than a fifth of that amount before tripling it under the MWPCL enhancement. Now, the question is what percentage of a reduction is appropriate in light of the degree of success.

---

[10] The decision in *Lipenga v. Kambalame* concerns a similar fact pattern as initially alleged in the instant matter. 219 F. Supp. 3d 517. The defendant brought the plaintiff to the United States to provide domestic services and childcare. *Id.* at 522. There was a contractual agreement between the parties, although it was in English and the plaintiff did not read English. *Id.* The plaintiff worked for the defendant for a period of three years under conditions of abuse and neglect. *Id.* at 523-24. She was restricted from leaving the house, she worked for well over the agreed upon hours and was not compensated sufficiently. *Id.* at 524. On default judgment, Judge George J. Hazel awarded the plaintiff $534,937.06 in compensatory damages and $534,937.06 in punitive damages under the TVPRA and $31,471.08 under the MWHL. *Id.* at 530-33.

22

In *Andrade v. Aerotek*, 852 F. Supp. 2d 637 (D. Md. 2012), the plaintiffs sought $288,000.00 in fees. The court reduced the fee claim by 25% to reflect the relatively low degree of success. In that action, the plaintiffs were pursuing claims under the FLSA for a national class, but won only $14,000.00 in back pay for eight individual plaintiffs regarding "off-the-clock" claims. The plaintiffs had originally pursued "misclassification claims" as well as the "off-the-clock" claims.

In *Jackson v. Estelle's Place,* the plaintiffs settled with defendants "early on" for amounts ranging from $430.00 to $12,471.34. 391 F. App'x at 240-41. In doing so, the plaintiffs "abadonded" nine (9) of the original thirteen (13) claims they brought. *Id.* at 241. The Fourth Circuit affirmed the district court's decision to reduce the lodestar amount by 25% due to the number of claims plaintiffs did not prevail on and the low amount recovered compared to what plaintiffs originally sought. *Id.* The fee award of $36,000.00 represented approximately three times larger than the largest amount an individual plaintiff received and over twice the total amount recovered by all plaintiffs. *Id.* at 240-41.

It should be noted that "attorneys' fees awards may 'substantially exceed [ ] damages' in FLSA cases." *Atkins v. Sunbelt Rentals, Inc.*, Civ. No. PWG-14-1717, 2016 WL 3647610, at *4 (D. Md. June 30, 2016) (listing cases and determining an award of $95,400 in fees was reasonable where plaintiff settled his FLSA claim for $30,000 after two-years of litigation but before trial commenced); *see also, e.g.*, *Ekeh v. Montgomery Cty.*, No. JKS-12-2450, 2016 WL 3523685, at *6 (D. Md. June 28, 2016) (awarding $31,970.50 in attorneys' fees where plaintiff prevailed on two of three years-worth of overtime claims amounting to $7,344.00).

In light of these decisions, I recommend that Plaintiff's request for attorneys' fees be reduced by 20%. Plaintiff's monetary award of $29,970.03 is less than half of the base-level

23

amount she sought in her wage and hour claims, and it is a small fraction of what initially she sought by including her TVPRA claims at the commencement of these proceedings. Additionally, Plaintiff prepared for trial with the clear expectation that she would seek to recover under the TVPRA claims as well. It was barely two weeks before trial and prior to any dispositive decision by the Court when she withdrew the TVPRA claims.

At the end of the day, the Court's calculations are as follows: Ms. Cooperman hours are reduced by 0.5 hours to 63 hours. Mr. Rosenfeld's hours are reduced by 1.1 hours to a total of 252.7 hours. Mr. Sampson's hours are reduced by 11.0 hours to a total of 159.7 hours. Ms. Perna's hours are not reduced on an individual basis. Ms. Crampton's hours are reduced by 3.1 hours to a total of 0 hours. Considering the billable hours rate of Ms. Cooperman at \$475.00, Mr. Rosenfeld at \$225.00, and Mr. Sampson and Ms. Perna at \$150.00, the total lodestar prior to reductions would be \$119,932.5. Next, to prevent awarding Plaintiff for the labor and hours spent on the unsuccessful claims, for the period of time they were pending before this Court I recommended reducing the lodestar amount by one-third. Therefore, the amount for reasonable fees for the period between August 29, 2016, and May 10, 2018, comes to \$56,286.67; the amount of fees for the remaining amount of time comes to \$35,517.50, for a total of \$91,804.17. Finally, applying the downward adjustment of 20% to reflect the measure of success obtained, the net fees to be awarded are \$73,443.34.

## IV.    Costs

Plaintiff also seeks to recover \$17,306.00 for costs incurred while litigating this proceeding. Pl.'s Mem. Ex. 2 to Decl. 5, ECF No. 110-3. These include costs for photocopies, deposition, transcripts, postage, service, attorney travel and research. *Id.* Plaintiff has submitted a list of the items for which she is seeking reimbursement, in compliance with the Guidelines. "Generally, reasonable out-of-pocket expenses (including long-distance telephone calls, express

and overnight delivery services, computerized online research, and faxes) are compensable at actual cost." Guidelines, App. B(4)(a). Therefore, I recommend reimbursing Plaintiff for costs as follows: $954.25 for photocopies; $1,804.75 for deposition and transcripts; $230.00 for postage and courier; and $127.23 for attorney travel. This comes to a total of $3,116.23.

Plaintiff also seeks reimbursement for $13,968.70 for research conducted throughout these proceedings. While this section includes dates on which the research was conducted, it lacks specificity as to what Plaintiff's counsel researched during these times. A comparison of the filings made on or around those same dates and the notations in Plaintiff's list of billable hours reveals that at least a portion of the research conducted had to do with the claims raised under TVPRA. As there was no additional information provided with the requests for costs, I recommend reducing the costs recoverable by half for research conducted during the period of time the TVPRA claims were pending. *See Jackson v. Estelle Place, LLC*, No. 1:08 CV 984 (LMB/TRJ), 2009 WL 1321506, at *5 (E.D. Va. May 8, 2009), *aff'd. sub nom. Jackson v. Estelle's Place, LLC*, 391 F. App'x 239 (4th Cir. 2010) (reducing the amount of expenses reimbursed by those "either unrelated to or unnecessary for the successful claims"). Accordingly, costs for research conducted from September 6, 2016 to May 10, 2018, are reduced from $13,205.20 to $6,602.60. Costs for research conducted from May 11, 2018 until July 7, 2018, the last date included with this filing, should be reimbursed as requested by Plaintiff: $763.50. I recommend Plaintiff to be reimbursed $7,366.10 for research. Therefore, the total amount for costs to be reimbursed to Plaintiff is $10,482.33.

## V. Conclusion

In light of the factors to be considered under *Johnson v. Georgia Highway Express, Inc.*, and the degree of success obtained by Plaintiff, it is my recommendation that Plaintiff be awarded attorneys' fees in the amount of $73,443.34 and reimbursed for $10,482.33 in costs.

October 31, 2018

/s/

Charles B. Day
United States Magistrate Judge

CBD/clc